# Morr's Appeal.

1. A father became surety for a married daughter in her note ; after his death, she died intestate, leaving children. *Held*, that the debt, although chargeable to the estate of the decedent, being void against her, could not be deducted from the shares of her children.

2. A debt of a child to the parent cannot be changed into an advancement, but may be deducted from the child's share.

January 27th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Orphans' Court of *Snyder county :* Of July Term 1875, No. 162. In the distribution of the estate of Jacob J. Morr, deceased.

The decedent died in April 1858, leaving a will, by which he gave all his estate, in equal shares, to his ten surviving children, one of whom was Catharine Summers, then intermarried with Henry Summers. She died in June 1859, intestate, leaving to survive her her husband and four children. Another of testator's children died intestate, unmarried and without issue. The execu-

tors, &c., of Jacob J. Morr filed their final account April 9th 1874. The account was confirmed and showed a balance of $19,349.48 in their hands. James W. Knight, Esq., was appointed auditor to·make distribution.

There were presented to him, as claims against the estate, two notes under seal, dated July 21st 1855, executed by Mrs. Summers, her husband being then alive, and the testator as her surety. The aggregate amount of these notes, interest and costs, at the time of the hearing, was $344.93. The auditor divided the balance in the executors' hands into nine shares, and deducted the amount of the two notes, costs, &c., from the share of Mrs. Summers; her husband having given up his interest to her children, he divided the remainder amongst these children.

The children of Mrs. Summers filed exceptions to the report:—

1. The auditor erred in deducting the amount of the notes from the shares of the children of Catharine Summers.

2. He erred in not deducting the amount of the notes from the general fund.

Bucher, P. J., delivering the opinion of the court on the exceptions, said:—

* * * "Were these notes advancements to Mrs. Summers by the testator, or were they debts due by her to him? If they were either, the report of the auditor must stand, otherwise he must be convicted of error.

"An advancement is a pure and irrevocable gift by a parent in his lifetime to his child on account of such child's share of the estate after the death of the parent: Miller's Appeal, 7 Casey 337.

"It cannot be pretended here that these notes are advancements for the reason that the money paid upon them was not paid by the decedent in his lifetime, and there is nothing to show that the testator intended them as such when he signed them. The presumption would rather be that he placed his name to them as surety in the expectation that Mrs. Summers would meet them at maturity. Her signing with him negatived the idea of his intention to advance to her the amount of the notes. Mrs. Summers failed to meet the notes, and we have already seen the estate of the decedent must discharge them.

"Does this raise the relation of debtor and creditor between Mrs. Summers and the testator, so as to make her liable for the amount his estate was compelled to contribute to the payment of these notes?

"In ordinary cases it would, but here we are met with the stubborn fact that Mrs. Summers was a feme covert. This placed her under a disqualification to contract. Her notes were not voidable, but absolutely *void*. They gave the holder no right of a claim against her, although the testator as her security was bound. If the latter had paid the notes in his lifetime, his equity to proceed

against her would not have been superior to that of the holders or payees of the notes. We have seen that the holders of this paper had no right of action against her, and it follows from this that her surety could have none even if he paid the money.   *   *   * These notes then, so far as Mrs. Summers was concerned, were simply *void*, and this is true even if the notes had been given for the purchase-money of real estate. In that event the property conveyed might have been liable for the payment of the debt, but neither the creditor nor the surety could have gone beyond it and imposed a personal liability upon Mrs. Summers. The learned counsel admit this, but contend that whilst this obligation is void at law it is good in equity, and that the Orphans' Court being a court of equity, and the exceptors claiming as distributees in it, must do equity before they can participate in the distribution. It does seem contrary to equity and every principle of justice that these grandchildren should be permitted to take a full share of the estate without accounting for the money the estate was obliged to pay on the obligations given by their mother. The vice in the argument lies here. The contract of Mrs. Summers to pay these notes was void ; the relation of debtor and creditor did not exist between her and the holders of these notes, and therefore could not arise between herself and the surety upon his paying the notes for her. No equity can spring out of a void contract. The law consists of general rules for the government of all alike, and we are not at liberty to set them aside because they work injustice in particular cases or because the relation of parent and child exists between the parties.

"The law admits of no such exception and equity follows the law in these cases. The payment of this money then did not create the relationship of debtor and creditor between Mrs. Summers and her father, the testator. Without this there could be no defalcation against her, and as a sequence, not against her children. 'A debt is but a set-off in equity against the share of the distributee.' It must, therefore, be one which is subsisting and recoverable at the time of the father's death in order to constitute an available defalcation to a distributive share : Hughes's Appeal, 7 P. F. Smith 181. We hold, then, that the relation of debtor and creditor did not exist between the testator and Mrs. Summers, and that her children ought not to be charged with the amount of these notes, but that the same must first be deducted from the general fund, and the balance distributed among the heirs."   *   *   *

The court then stated a schedule of distribution by which they deducted the above-mentioned claims from the general balance, and divided one-ninth of the remainder amongst the children of Mrs. Summers.

Isaac Morr, one of the other distributees, appealed to the Supreme Court, and assigned for error, that the court erred in deduct-

[Morr's Appeal.]

ing the amount due on the two notes from the general fund, and making distribution of the balance.

*A. C. Simpson*, for appellants, cited Earnest v. Earnest, 5 Rawle 213; McConkey v. McConkey, 9 Watts 352; Levering v. Rittenhouse, 4 Whart. 130; Manifold's Estate, 5 W. & S. 340; Springer's Appeal, 5 Casey 208.

*W. Van Gezer* (with whom was *H. H. Grimm*), for appellees.— The debt was void against Mrs. Summers, and could not be enforced against her; her children, therefore, were not responsible for it out of their share of the estate: Hughes's Appeal, 7 P. F. Smith 181; Levering v. Rittenhouse, 4 Whart. 130.

Judgment was entered in the Supreme Court, February 17th 1876,

PER CURIAM.—It does not appear that the notes given by Mrs. Catharine Summers, with Jacob J. Morr, her father, as surety, were at all binding on her, she being under the disability of coverture. Nor does it appear that her father became surety and paid the notes as an advancement to her. His mistake as to the capacity to bind herself, cannot change the intention existing when the notes were given.

In order to create an advancement, out of what was only intended as a debt, to be paid by her to the holder of the notes, there would have to take place a mere legal transmutation of one thing into another. This might be equitable, but we know of no decision which has changed an intended debt into an advancement, though, if binding, it may be deducted from the children's share. Mrs. Summers then not being bound as a debtor, and not being advanced as a daughter, was not liable to be charged with the notes as an advancement, and her share is not subject to it in the hands of her children.

Decree affirmed with costs, and appeal dismissed.